IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

WILLIAM M. BOGANS, III,

     Plaintiff,

     v.

MAY TRUCKING COMPANY,

     Defendant.

CIVIL ACTION NO.: 4:26-cv-156

# O R D E R

This case was removed by Defendant to this Court from the Superior Court of Chatham County, Georgia, on the purported basis of diversity jurisdiction. The Court inquires, *sua sponte*, specifically into whether the removing Defendant has demonstrated that the amount in controversy in this case is sufficient to support diversity jurisdiction. For the reasons outlined below, Defendant has not done so and the Court therefore lacks subject matter jurisdiction over the case. See Morrison v. Allstate Indem. Co., 228 F.3d 1255, 1261 (11th Cir. 2000) (When, for any reason, subject matter jurisdiction appears to be lacking in a case, "a federal court must inquire *sua sponte* into the issue[.]") (citation omitted). Accordingly, the Court **DIRECTS** that the case be **REMANDED** to the Superior Court of Chatham County, Georgia.

## BACKGROUND

On April 27, 2026, Plaintiff, who is proceeding *pro se*, filed this suit against Defendant in the Superior Court of Chatham County, Georgia. (Doc. 1-2.) In short, Plaintiff, who is a truck driver, claims that Defendant, his prior employer, lied to his prospective employer about an

accident that he was in while in Defendant's employ.  (Id.)  As a result, Plaintiff claims, on or about February 22, 2026, the prospective employer revoked a job offer it had extended to him.  (Id. at p. 3.)  Plaintiff asserts claims for tortious interference with business relations (Count I), and libel and defamation per se (Count II).  (Id. at p. 4.)  In addition to "actual, general, and special damages in an amount to be determined at trial," he also seeks punitive damages (in an unspecified amount) and a permanent injunction ("ordering Defendant to expunge the 'preventable accident' [determination] from its internal files and to cease reporting said incident to any third party").  (Id. at pp. 4–5.)  Among several exhibits attached to the Complaint is an email from the prospective employer providing information about the position that was offered to Plaintiff, including information about his compensation package.  (Id. at pp. 24–26.)  On June 15, 2026, Defendant removed the case to this Court based on diversity jurisdiction.  (Doc. 1.)

## DISCUSSION

A defendant may remove a civil action originally filed in a state court to the federal district court when the district court has original jurisdiction to consider the case.  Lost Mtn. Homeowners Assoc., Inc. v. Rice, 248 F. App'x 114, 115 (11th Cir. 2007).  "Original jurisdiction requires diversity of the parties or the existence of a federal question."  Id.  Here, Defendant invoked only this Court's diversity jurisdiction, and no federal question appears on the face of the Complaint. Diversity jurisdiction exists when (1) the action is between citizens of different states and (2) the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  In its Notice of Removal, Defendant alleges that Plaintiff is a citizen of Georgia and that Defendant, a corporation, is a citizen of Idaho (place of incorporation) and Oregon (principal place of business).  (Doc. 1, p. 4.)  Thus, the diversity of citizenship requirement appears to be satisfied. The issue of concern to the Court is whether the amount in controversy exceeds $75,000.

2

The Complaint does not assert any specific amount of claimed damages. (See generally doc. 1-2.)   When a complaint does not plead a specific amount of damages, removal is proper if it is "facially apparent" from the complaint that the amount in controversy exceeds $75,000. Williams v. Best Buy Co., 269 F.3d 1316, 1319 (11th Cir. 2001).   In this analysis, a court may "make 'reasonable deductions, reasonable inferences, or other reasonable extrapolations' from the pleadings to determine whether it is facially apparent" that the amount in controversy has been met.   Roe v. Michelin N. Am., Inc., 613 F. 3d 1058, 1061–62 (11th Cir. 2010) (quoting Pretka v. Kolter City Plaza II, Inc., 608 F.3d 744 (11th Cir. 2010)).   If it is not facially apparent from the complaint that the amount in controversy exceeds $75,000, then the court should look to the notice of removal and any other evidence relevant to the amount in controversy at the time of removal. Pretka, 608 F.3d at 754.   The removing defendant bears the burden of proving the existence of federal jurisdiction, but where the complaint does not specify a claimed amount of damages, the removing defendant need only show "by a preponderance of the evidence that the amount in controversy more likely than not exceeds the [$75,000] jurisdictional requirement." Tapscott v. MS Dealer Service Corp., 77 F.3d 1353, 1356–57 (11th Cir. 1996); see also 28 U.S.C. § 1332(a).

Although, in analyzing the likely amount in controversy, "[t]he law does not demand perfect knowledge or depend any less on reasonable inferences and deductions than we all do in everyday life," Pretka, 608 F.3d at 754, the Court need not "suspend reality or shelve common sense in determining whether the face of a complaint, or other document, establishes the jurisdictional amount," id. at 770 (internal quotations and citation omitted).   Importantly, a court's "analysis of the amount-in-controversy requirement focuses on how much is in controversy at the time of removal, not later." Id. at 751.

3

Here, the Complaint does not propose any basis for calculating the damages Plaintiff claims to have suffered or to be seeking.  Accordingly, it is not "facially apparent" from the Complaint that more than $75,000 is in controversy.  In the main text of the Notice of Removal, Defendant states only—tersely and conclusorily—that "[t]he amount in controversy exceeds $75,000.00, excluding interest and costs." (Doc. 1, p. 4.)  However, in a footnote spanning more than a page and half (single-spaced and in small font), Defendant launches into an elaborate theory about how this case "clear[ly]" places more than $75,000 in controversy.[1]  (Id. at pp. 4–6 n.5.)  Defendant relies heavily on Plaintiff's claim of tortious interference with a job offer.  Defendant asks the Court to assume that if Plaintiff were successful on this claim he would recover at least two full years' worth of the compensation package described in the offer email (which was attached to the Complaint).  Defendant proposes that, under the compensation terms described in the offer email, Plaintiff would have earned at least $52,000 per year.  (Id. at p. 5 n.5.)  Defendant, however, does not cite any legal authority to support such a recovery (two years' worth of earnings) under Georgia law for the type of claim that Plaintiff has made.[2]  (See generally id.)  Moreover, even assuming Defendant is correct that Plaintiff—if successful—could ask a jury to award him lost compensation at a rate of $52,000 per year, Defendant has not shown that, *at the time this case was removed* (less than four months after the job offer was made and rescinded), the recovery of more than a full year of earnings was in controversy.  See Balkum v. Pier 1 Imports (U.S.), Inc., No. 6:17-cv-1299-Orl-37DCI, 2017 WL 3911560, at *2 (M.D. Fla. Sept. 7, 2007) (explaining that "courts within this [d]istrict hold differing opinions on whether back pay that accrues in the time period following

---

[1] It is unclear why Defendant relegated this crucial point to a footnote—albeit an oddly extensive note—as if this issue lacked importance.

[2] Defendant refers to Plaintiff's potential damages for the tortious interference claim as "lost wages," (doc. 1, p. 5 n.5), but Plaintiff's Complaint never specifically requests "lost wages," (see doc. 1-2, p. 4).

removal through trial or judgment should be included when ascertaining the [amount in controversy]" and explaining that the Eleventh Circuit "has not resolved this split"); see also S. Fla. Wellness, Inc. v. Allstate Ins. Co., 745 F.3d 1312, 1315 (11th Cir. 2014) ("What counts is the amount in controversy *at the time of removal*.") (emphasis added).

Additionally, even assuming Georgia law entitles Plaintiff to recover at least two full years' compensation, the Court has reservations about the accuracy of Defendant's estimation of Plaintiff's yearly earnings. The email did not offer Plaintiff a specific yearly salary; instead, it gave rates of pay (i.e., per mile and per on-duty hour) and disclosed an "average" number of miles per week. It did not, however, state a minimum number (or even a required number) of weekly hours "on duty" or weekly miles of driving. (See doc. 1-2, pp. 24–25.) Accordingly, Defendant is asking the Court to speculate about how these provisions would have applied if Plaintiff had been hired. For instance, while the email gives a "mileage" rate ($0.40) and it lists "Average Miles per Week" as 2,500, the next line provides "Time at Home: Every other week," which could be interpreted to mean that Plaintiff would only be driving (and thus compensated) every *other* week of the year. (See id.) Yet Defendant calculates the annual compensation amount based on the assumption that Plaintiff would drive at least the average of 2,500 miles per week for every single week of the year. (See doc. 1, pp. 4–5 n.5.) In sum, the Complaint (including exhibits) simply does not provide a clear picture of how much Plaintiff would be earning if he had been hired by the prospective employer and, as a result, the Court declines to find that any specific amount of damages for the tortious interference claim was in controversy at the time of removal. See Lowery v. Ala. Power Co., 483 F.3d 1184, 1211 (11th Cir. 2007) (disapproving "unabashed guesswork" and "speculation" at the amount-in-controversy stage).

5

While Defendant argues that the damages to which Plaintiff would be entitled for the tortious interference alone are sufficient to meet the amount in controversy requirement, it also claims that Plaintiff's punitive damages claim satisfies (or helps satisfy) the amount in controversy. (Doc. 1, p. 5 n.5.)  Without citing any case law, Defendant speculates that Plaintiff would likely recover at least "a 1:1 ratio of punitive to compensatory damages—well within the single-digit range the Supreme Court has endorsed."  (Id. (citing State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408 (2003)).)  The punitive damages request fails to aid in satisfying the amount in controversy requirement because, as described above, Defendant has not made an adequate showing of Plaintiff's likely (or even potential) recovery for the tortious interference claim (and it has not attempted to make any amount-in-controversy showing regarding the defamation claim). Moreover, Defendant has not offered citations to comparison cases involving punitive damages awards (in an effort to support an inference that this case could result in a comparable punitive damages award, or award ratio), much less has it attempted to demonstrate any such case's relevance to Plaintiff's claims here.  See, e.g., Federated Mut. Ins. Co. v. McKinnon Motors, LLC, 329 F.3d 805, 809 (11th Cir. 2003) (holding that "mere citation to what has happened" in other cases "in the past does nothing to overcome the indeterminate and speculative nature of [the removing party]'s assertion" regarding the amount of punitive damages at issue "in this case"); see also Clemmons v. State Farm Fire & Cas., Co., No. 1:24-CV-772-JTA, 2025 WL 1270084, at *3 & n.8 (M.D. Ala. May 1, 2025) (holding that a removing party failed to demonstrate the amount in controversy when the party cited cases involving large punitive damages awards, "but . . . fail[ed] to explain why the facts Plaintiff alleged in the Complaint would warrant such damages"). Accordingly, Plaintiff's punitive damages request lends insufficient support to the required amount in controversy showing.

**CONCLUSION**

In light of all the foregoing, Defendant has not shown that the value of this case met the jurisdictional threshold at the time of removal. Accordingly, the Court lacks subject matter jurisdiction and thus **DIRECTS** the Clerk of Court to **REMAND** this case to the Superior Court of Chatham County, Georgia, for further proceedings. Following remand, the Clerk of Court is **DIRECTED** to **TERMINATE** all pending motions, (doc. 4), and to **CLOSE** this case.

**SO ORDERED**, this 25th day of June, 2026.

_____
R. STAN BAKER, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA